May it please the Court, George Boisseau for Mr. Curtis Anderson. Your Honor, this, I'd like to address the issue of the prior consistent statement that was introduced over objection by the government in this trial, which turned out to be a pivotal piece of evidence in this particular case because when the jury began deliberations, the first thing they asked was the portion of the tape that was played as a prior consistent statement to listen to that, to determine the the I guess the credibility of Mr. Peterson, the prime government witness against Mr. Anderson, Mr. Malachi. The this obviously was introduced over objection. But in this case, the really issue is the fourth factor of the analysis under Tome, is that whether the prior consistent statement must be made prior to the time that the supposed motive to fabricate arose. In this particular case, the prosecution argued and the district court agreed that because the Mr. Peterson was 20 years in custody, if he did not cooperate with the government, that that that was a motive to fabricate at that particular time and that anything came before it was admissible because of because not that the district court didn't find that he didn't have a motive to fabricate beforehand, but he had a greater motive to fabricate after the 20 years was mentioned to him. Well, what the district court actually did during the course of the trial and in its ruling post-trial was to say, look, you know, I've sat through this whole thing. I've listened to it. I've heard the testimony. I heard the way the cross-examination went down. And I find that everybody focused on the save-your-hide comment. And that was what the defense was charging created the motive to fabricate. So anything that occurred before that can come in. Even if there may have been some other pressures, that was the focus. So my question is why, at this point, is that finding an abuse of discretion? Well, it's abuse of discretion because it's not supported by the evidence presented at trial. Well, sure it is. I've read it, and it is. Is it legally? I mean, is there an error of law there, or is it just sort of the district court went to sleep? No, it is an error of law because it's an interpretation of the factors when the motive to falsify arose. I mean, that is a factual and a legal question. The court focused on the legal question, whether, I mean, a greater motive to fabricate arose at that point in time. Now, the defense, I mean, there was two counsel. One counsel concentrated on that particularly colorful statement given by the agent to Mr. Peterson. Now, I was a trial attorney that was second in cross-examination. I asked Mr. Peterson regarding how the interview started, and it was clear from Peterson's testimony that the interview started that he, first of all, that the chief of police came up with the agent. They both were invited to Mr. Peterson's residence, and the agent started asking Mr. Peterson, saying that, well, we're here to ask you these questions, and you can really help yourself by testifying against others. Now, if that's not a motive to fabricate, that he could help himself, that he's facing serious problems, I wouldn't know what the motive to fabricate is. It's certainly true that the 20-year statement is, that it was focused on by the judge. But what the district court said was a fair reading of the record, and the court's own assessment of the examination from having sat through it was that, although there may have been subtle pressure before, any pressure was hardly more than would just be normal. And the event that dramatically escalated it was the save-your-hide comment, and that was the first time the severity of the criminal penalties was laid on the table. Now, are we supposed to second-guess that impression? The answer is yes, Your Honor. I would, because the impression is, the district court is saying that, well, I'm not saying there wasn't a motive to fabricate earlier, and there wasn't motivation to fabricate earlier, but I'm saying that the greater motivation was afterwards. Now, Tome didn't say that there was gradations of the motive to falsify. The whole idea of a prior influence is that you have to trigger, you have to identify the trigger. And to me, I guess what I'm just posing to you is that that's precisely what the district court did. It identified the trigger as being the save-your-hide comment that was repeated over and over and over and over again in the focus of the cross-examination. Well, that certainly was focused on Mr. Malachi's cross-examination. And I don't doubt that that was the focus of Mr. Malachi's defense because, I mean, of the nature of what he was trying to seek from his cross-examination. But that is not to say that Mr. Peterson didn't have a motive to fabricate earlier. And it's not really contested from the record that the agent was telling Mr. Peterson that he was in serious problem. There was a chief of police right there with him during this interview, and off tape, that he's saying that the only way you can help yourself is testify against others. Now, when you're confronted with the issue of that, you can help yourself by testifying against others. Now, at that point, you're thinking that, well, I can give them some statements. As long as I give them statements that implicate the others' activities, I'm okay. I'll be better off than I was before. And certainly at that point in time, he had at that point in time, off tape, he's got a motive to fabricate. Now, the issue is that the prior consistent statement comes in to rebut a claim that the witness's trial testimony is a fabrication. Well, you would have to believe that Mr. Peterson, when he gave the statements that were admitted, had no motive to fabricate. He was just telling the truth. He was telling it to a friend of his and just saying what happened, and the police weren't there, and he could do anything. All this was kind of heartfelt, and he was just doing it for just telling the truth. Well, that's not the case because he's got an agent right there. He's got the chief of police right there telling him, hey, you can help yourself by testifying against others. Now, the critical part is that the government gets to argue that, well, you can believe Mr. Peterson because of the fact that before the 20 years, that statement was consistent with his trial testimony, therefore it must be true. But that's a manipulation of a motive. I mean, your motive to fabricate either exists or it doesn't exist. The fact it exists in a greater degree, your anxiety level is higher, doesn't mean that you didn't have it before when you've got a police chief and an investigator asking you questions, telling you you can only help yourself by testifying against others. So the government and the district court focused on gradations of this motive to fabricate, and my contention is that that would turn the prior consistent statement on its head. I take it in this case, correct me if I'm wrong, that the prior, the statement we're talking about that occurred before the savior hide, that that came in on direct? Actually, it came in on the government redirect. Doesn't that strengthen the government's argument? The court under our case is on open door. I mean, on cross, you properly cross-examined Peterson about motivations for telling the truth and asked him specifically about the savior hide comment, right? I think any competent defense lawyer would. We did ask him about that savior hide. I think it was Mr. Malachi's attorney that asked him specifically regarding that. Yes, that's true. So it didn't come in on direct? No, direct. Oh, I'm sorry. Let me just finish the question and then you can correct me or tell me if I'm off basis. I now understand it. The comment that your – the testimony that you think was improperly allowed did not come in on direct. The government did not offer it in their direct, right? Sure. In the cross-examination, one of the defense attorneys cross-examined Peterson about his motivation to tell the truth after the savior hide comment was made, right? Am I right so far? I think the question was broader than that. He – the argument that he was – that Mr. – that the agent asked him this and was threatening him at this point in time. I don't think the defense counsel suggested that anything that was said before was supposed to be true. I'm talking about timing. But an emphasis in cross-examination was about whether the savior hide comment provided a reason for Peterson to fabricate. I would agree with the Court, yes. Okay? And then on redirect, the government comes in and examines what was said before that, right? Yes. Doesn't that – isn't – doesn't that strengthen the government's argument? Doesn't that strengthen the district court's findings in this regard? Your Honor, and to – quite frankly, the timing is not quite like that because there was two defense counsel. And Mr. Peterson's – Mr. Malachi's attorney, who went first, argued – talked about the 20-year statement. Then, representing Mr. Anderson – counsel for Mr. Anderson, which was me, concentrated on the issue of the start of the interview and what was off tape, suggesting that there was a motive to fabricate at that point in time, starting before the tape even was queued up and started recording the statement of Mr. Peterson. Is it correct that the government didn't even attempt to offer this statement that you're concerned about now until one of the defense attorneys cross-examined on the point of whether the savior hide comment provided Peterson with a reason to fabricate? That's true. It was – the government offered this on redirect. Now, my argument – it's hearsay regardless. It's still hearsay. It's a question of whether it is – what's the admissibility for it? So the – if the government proffered, it was a prior consistent statement with the trial testimony. Now – but the problem is, is that the motive to fabricate occurred before the statement the government wanted to introduce was recorded. Now, we're only talking about a recording. All the stuff that was said by Mr. Peterson to the agent off tape, other than the fact that Mr. Peterson admitted that he was told by the agent he could help himself if he testified against others, all that is off tape but admitted by Mr. Peterson. The government proffered the first part of the tape until the savior hide statement. Now, it is a prior consistent statement. It's hearsay otherwise. And in my case, in an I'm argument, it's prejudicial hearsay because it supported the – there was statements by Mr. Peterson of involvement of the defendants in certain activity. And that – by virtue of the fact that it comes in, the government was able to argue that, you know, that was consistent before this motive to fabricate, before he had a motive to fabricate. Well, but that's not true. The truth of it is, is that since he – once he was interviewed, the first time the officers came to that, before he's on tape, the motive to fabricate occurred at that point in time. The prior inconsistent statements of Peterson came in. Is that correct? He had earlier denied. Yes. Prior inconsistent statements came in. Of course, the standard for a prior inconsistent statement is not the same. No, of course not. That's what I understand. I just wanted to know if it got in. Defense did introduce, I believe, prior inconsistent statements against Mr. Peterson. But this particular portion that we're talking about didn't contain prior inconsistent statements, just prior consistent statements. And, yes, I mean, the argument is the prosecution, it's a harmless error because there was other evidence. But this is the evidence that the jury focused on. This is the first thing that they asked for. They wanted that tape. They wanted to listen to the tape. Because the credibility of Mr. Peterson was critical to determine whether these acts committed by the two defendants was criminal and whether the prosecution could prove that this was part of a scheme to defraud the tribe. And the defense was that, yes, there was money, but it wasn't part of a scheme to defraud and there was no theft from the tribe. So it was critical evidence that made a difference in this particular case for the government to the prejudice of the defense. If I could save just a couple minutes. Surely. Mr. Gilliam? May it please the Court. Thank you, Mr. Chief Justice. My name is Haywood Gilliam, assistant United States attorney on behalf of the United States. As to the prior consistent statement issue, Your Honors, the government's position is straightforward, and that is that under Federal Rule of Evidence 801d1b, when the defense raises a particular identified motive that it asserts was the basis for recent fabrication, the government is entitled to meet that particular assertion with rebuttal evidence, specifically statements that preceded that identified motive that are consistent with the witness's trial testimony. Well, I suppose the difficulty here is that one defense counsel contends that that particularly identified motive came when the police officers walked in the door. Although, Your Honor, I think it's important, though, to focus on what the record actually showed, because I would submit that Mr. Boisseau is essentially trying to recast the record in a way that makes his argument stronger. What we had here was Mr. Malakay's counsel set up a very specific before-and-after motive, and it wasn't ambiguous. He essentially said, and I cited the portions of the record in my brief, first he said to Mr. Peterson, when an investigator, a private investigator from the tribe first came and talked to you, you said that you weren't involved in stealing from the tribe. Mr. Peterson admitted that was true. Mr. Malakay's counsel then said, when Mr. – when Agent Redmond, the agent who did the interview, first came and talked to you, you again denied that, correct? He admitted that. Then Mr. Malakay's counsel very specifically said, then Agent Redmond told you that the maximum penalty for this offense was 20 years, and if you wanted to save your hide and not go with these guys, you'd better tell me what happened. Correct. And then there was some back and forth on that, but the result was that then, finally, Mr. Peterson admitted that something along those lines was said, and then Mr. Malakay's counsel said, after that exchange, you've now admitted to stealing from the tribe, you're cooperating with the government, you're cooperating with the government right now, correct? So this was as directly identified as could have been. It was a clear before and after that was set up. It was not that the trigger for changing the story was Agent Redmond showing up at the door. Well, I think opposing counsel might agree with you if the only cross-examination had been by Malakay's attorney, but what about the other – what about the cross-examination by Anderson's attorney? Well, a couple things, Your Honor. One is, I think, regardless of that fact, the fact of the matter is that the jury had put before it at that point in Mr. Malakay's cross-examination a very specific, very potentially powerful – Well, yeah, but if the other – I mean, if the other counsel said, well, now, wait a minute, weren't you threatened or under pressure from the minute – you know, early in the interview, then doesn't that create a different trigger point for the – It doesn't, Your Honor. I think the point is that there can potentially be two separate arguments that the counsel are making about what the trigger was, but the fact of the matter is there was a very specific one that Mr. Malakay's counsel laid out, and the government has to be able to meet that. Essentially, if that's left unrebutted – and it was very specific that Mr. Malakay's counsel said, until this remark was made, in effect, you were not telling the story you're telling us now. That wasn't true, and that was readily provable based on the contents of the transcript that Mr. Malakay's counsel himself had prepared. So 801d1b says that once that motive is asserted, the government has the right to meet it, and that's what the government did. And that can't be – Is that admissible against the other defendant? Yes, Your Honor, I would submit that it is admissible as substantive evidence against both defendants because it was – so this is essentially a rebuttal of impeachment as to a particular matter going to the witness's credibility. But I think it's also important to note that it is – the record's not as clear as Mr. Boisseau would make it, even as to his cross-examination. If you read the transcript carefully, Mr. Boisseau, I believe, was trying to set up the idea that there was some sort of threat made before the tape was rolling and that it was the same threat that came later. But the district court found, having sat through the examination and examined the record, that that was not the case. And in fact – At the time of the cross and the redirect, or at any time thereafter, was there a request for a limiting instruction as to this prior consistent statement? Your Honor, I – there wasn't a request for a limiting instruction per se. The court did explain to the jurors why the tape was being played. In a sense, at any point did Mr. Boisseau stand up and ask or move the court to instruct the jury that the prior consistent statement was to be considered only against the other codependent? No, Your Honor. That request was not made. But at any rate, as to the – even as to Mr. Boisseau's cross-examination, Your Honor, you can see that what he essentially tried to do was establish that many things happened before the tape was played. The witness said he frankly didn't remember whether the admonitions came before or after the tape recorder was turned on. And Mr. Boisseau then directed the witness to the transcript, obviously, which is part of the taped interview and said, well, as Mr. Malachy's counsel said, you were told about this 20 years and this and that. And the court – the district court's ruling that that particular identified motive was one that under Rule 801d the government could rebut directly was not abuse of discretion. Does the Court have any questions regarding the other issues raised by the appellant for the government? I don't think we have any further questions. Thank you. Thank you. Mr. Boisseau. In response to the government's claim that the cross-examination of Mr. Peterson wasn't exactly clear on the issue of when his motive defabricated, I've cited in my opening brief and my reply brief, and it's ER 155-156 and ER 157-158. And that is the 610 reporter's transcripts 130-132 and 132-133. I mean, the question is pretty clear. And the question reads, when he was off tape, he – this would be Mr. Redman – advised you that they were investigating you for certain misconduct, correct? That's correct. And he advised you of the seriousness of the misconduct you had been involved in, correct? That is correct, sir. And he told you essentially you could help yourself out, right? That's correct, yes. And you could help yourself out if you gave information on others, right? That's basically correct. Now, there was – you know, there was a little bit of backtrack regarding the – when it happened, whether it was they were off tape, but essentially he said, yeah, that's basically what happened. So there's no real dispute that this stuff happened before the introduction of the tape recording or before the tape recorded statement that was introduced by the government. Now, Judge Hawkins, it's true, I didn't ask for a limiting instruction. However, the evidence – it's hearsay. If it comes into the prior consistent statement, it comes in against both defendants. The argument that we made as defense counsel was that the motive to fabricate occurred prior to the tape recording, so therefore it was not admissible at all. And the – and – I'm not sure whether this is positive or not. I was just curious whether if the argument before us here now is that this did not occur, the door was not opened, if you will, as a result of your own cross-examination, whether you had requested such an instruction, and it sounds like you didn't. No, I didn't. And because the argument of the defense, and this was a consistent argument, that the motive to fabricate occurred prior to the tape being turned on, so none of this should have come in against any defendants. And the thing – the issue is the government doesn't rebut the motive, the actual motive to fabricate, what the trigger was. The government rebuts the testimony saying this – this prior to the motive to testify – prior to the motive to fabricate arose, this testimony is consistent with his trial testimony. And that's the purpose of a prior consistent statement, to essentially bolster the witness, saying that he said this before, you know, he thought it was in his best interest, and therefore you can believe him because he didn't have a motive to fabricate. Well, that's just not the case in this case. From the get-go, from that interview, all the stuff that Mr. Peterson said, he had a motive to fabricate, knowing that he could help himself out by testifying against others. And I can't think of anything that is a greater motive to fabricate is that if you're told that, well, you can help yourself, but you've got to testify against others. You thought, on behalf of your client, that there were earlier and more important motives or triggers to fabricate. Absolutely. Is that correct? That's what I did, and that's why – The district court, though, found otherwise. Yes. The district court found that the colorful language was the – was the trigger. The savior hide. Pardon me? The savior hide. The savior hide. And my argument to the district court and to this court also is that it is not the – a more powerful motive to fabricate is measured against a moderate motive to fabricate. It is that when a motive to fabricate arises, then it's not a consistent statement because you haven't met the foundation. And thank you, Your Honor. All right. Counsel, we appreciate both of your arguments, And the matter just argued will be submitted and will turn to a Great Basin Lime Watch. Did you say Lime Watch?
judges: Canby, Rymer, Hawkins